# CHEATHAM v. YOUNG.

1. It is not indispensable for a party, against whom a recovery at law has been obtained, on a contract founded on a gaming consideration, to shew any reason why he did not make a defence in that forum, to entitle him to come into chancery, and obtain relief.

ERROR to the Chancery Court at Florence.

In this case, a bill was filed by Cheatham, in the court of chancery, holden for the sixth chancery district of the northern division, to enjoin a judgment at law, obtained against him by Young, in the circuit court of Lauderdale. The bill charges that Young had an open account against the complainant, for money won at cards; that complainant acknowledged his indebtedness to the defendant in the sum of $250, on said account, in the presence of one David Young, (brother of the defendant) at the same time stating that it was on a gaming consideration; that complainant paid defendant, in part of said account $170, in a note for that amount held by him on the defendant; that at the time of said payment, complainant was ignorant of any fraud or unfairness, but afterwards ascertained that defendant had cheated and swindled him, by stocking the cards, and determined not to pay the balance of said claim; that defendant brought the action at law against him on said account, and complainant expected to prove the illegality of the consideration by the said David Young, the only witness who could prove the promise of payment.

That said David Young well knew the illegality of the consideration, on which said claim was founded, but to the surprise and disappointment of the complainant denied such knowledge on his examination as a witness; that complainant could not prove the illegality of said consideration by any other witness, and would have filed a bill for a discovery, but for his confident belief that he could prove it by said witness. An

45

injunction was granted. The defendant demurred to the bill for want of equity. The demurrer was sustained—but leave to amend was granted. An amended bill was filed, but only amplified the allegations contained in the original, without changing its character materially; and at a subsequent term the bill was dismissed. The complainant prosecuted a writ of error from this decree, and made the following assignment:

1. The court below erred in sustaining the defendant's demurrer to said bill.

2. The court erred in dismissing said bill.

McCLUNG, for the plaintiff.
PARSONS, *contra.*

CLAY, J.—This case was submitted by the counsel of the parties without argument, and without any brief; hence the court is left to determine the questions presented upon the record, without any intimation of the particular ground on which the decree of the court below was predicated, at least, so far as regards sustaining the demurrer to the bill, which seems to have decided the fate of the cause. In regard to the general question, whether the court of chancery has jurisdiction of cases arising on contracts, founded on gaming consideration, there can be no doubt. It has been given by express statute, and its exercise has been repeatedly sanctioned by this court. The bill charges, not only, that the sole consideration of the promise, on which the judgment at law was recovered, was for money won at cards; but also charges that the defendant practised upon him a fraud, in playing the game. Here are two grounds, either of which would be sufficient to give jurisdiction to the court of chancery, if there be no sufficient objection to the time and manner of the complainant's application for relief. The demurrer to the bill admits the truth of all its allegations, and virtually denies the complainant's right to the relief sought, notwithstanding such admission.

It may be insisted that the complainant had a good legal defence, which might have availed him on the trial of the action at law, and that he has lost his remedy by failing to make his defence before that tribunal. It may be admitted that such is a sound general principle, as to the right of a party, who has been

sued at law, to come into a court of chancery; yet we are not prepared to say that the bill does not shew a sufficient excuse for a failure to make that defence in the case before us. The bill shews that David Young was the only witness who could prove complainant's promise to pay the money, for which he was sued, alleges that the promise, made in presence of said witness, was accompanied by an explanation, shewing that its consideration was a gaming one; that complainant relied with confidence on proving the illegality of the consideration by said witness; and, therefore, did not file a bill for discovery, as he would otherwise have done. It is thus apparent, that the complainant had a well founded expectation, that he would be able to prove his matter of defence, and that he was disappointed, and *surprised* at the failure of the witness to give such evidence. According to the allegations of the bill the complaimant's reliance on David Young to prove the illegality of the consideration was reasonable; with that expectation he could not have called on the plaintiff at law for a discovery, his failure could not be foreseen, nor anticipated; consequently, we cannot impute to him such neglect, as would preclude him from relief in chancery.

But, independently of this view of the subject, the act of 1812, [Aik. Dig. 286, § 8,] and the construction heretofore given to it by this court, are decisive of the question. The section alluded to, is in these words: " The courts of equity shall have jurisdiction *in all cases of gambling consideration,* so far as to sustain a bill for discovery, or to enjoin judgments at law." In the case of Fenno, et al. v. Sayre & Converse, [3 Ala. Rep. N. S. 458 to 480,] the court said, " the obvious design of the act, was to increase the facilities of the loser of money at any unlawful game, to avoid its payment. Previous to its passage, the winner could not be compelled to discover, in answer to a bill in equity, that a contract, the subject of litigation, was founded on a gaming consideration, when an affirmative response would subject him to a penalty, or a crim nal prosecution. [Story's Eq. Plead. 466–7.] To take from the winner, the right to refuse to answer, was one object of the statute. Anterior to the act, a party against whom a judgment was recovered, upon a contract obnoxious to the law against gaming, was not entitled to go into equity, without showing some excuse, for the failure to avail himself of a legal defence,

to open the door of chancery, in such cases, *although the opportunity of defending at law had been neglected,* was the only additional end proposed by the statute."

According to the doctrine thus laid down, it is not indispensable that a party against whom a recovery at law has been obtained, on a contract founded on a gaming consideration, to shew any reason why he did not make his defence in that forum, and it is difficult to conceive any other motives than those adverted to by the court, in the case just cited, for the enactment of the law referred to. The Legislature declared as long ago, as the year 1807, [see Aik. Dig. 209,] that *all contracts,* whatsoever, "where the whole, or *any part* of the consideration" is "for money or other valuable thing whatsoever, laid or betted at cards" &c., "shall be *utterly void,* and of no effect, to all intents and purposes whatsoever." The enactment of 1812, aboved noticed, was in furtherance of the policy thus indicated, to discourage and suppress gaming, and to facilitate the means of giving effect to the former act, as annulling and rendering utterly void, the class of contracts arising out of such illegal, immoral, and vicious practices, and the construction it has received is but conformable to the manifest intention of the Legislature.

Let the decree of the court below be reversed, and the cause remanded for further proceedings.