## FOREMAN v. HARDWICK.

1. H sold land to F, and took his note for the payment of the purchase money, afterwards F won his note upon the result of the Presidential election of 1840, and the same was delivered up by H. *Held*, that the wager was illegal and void, that the delivery of the note to the maker did not discharge his indebtedness, and it was competent for the vendee by suit in

equity to assert his equitable lien, and enforce a collection of the purchase money by a sale of the land.

2. Where the vendor of land files a bill to enforce his equitable lien, he will be compelled to do equity ; if therefore, the vendee bids off the land, at a sale under an execution against the vendor, issued on a judgment rendered after the purchase, he shall be allowed the amount which he paid to the officer holding the process : for, although his title could not have been disturbed, yet if a third person had become the purchaser, a cloud would be cast over it, and the vendee himself might perhaps be involved in expensive and troublesome litigation.

Writ of Error to the Court of Chancery sitting in St. Clair.

The defendant in error exhibited his bill, setting forth that he made a wager in the year 1840, with the plaintiff, upon the result of the presidential election, then pending between Martin Van Buren and Wm. H. Harrison. This wager was made as follows, viz : the complainant executed a deed founded professedly upon a monied consideration, for the west half of the south-west quarter of section 19 in township 15, and range 3, east, situate in the county of St. Clair ; the defendant executed a similar deed for a half quarter section of land, adjoining that conveyed by the complainant, These several deeds were placed in the hands of A. M. Byers, who, by agreement between the parties, was to keep them until the result of the pending election should be known.

It was further agreed, that if M. Van Buren should be elected to the Presidency, both the deeds should be delivered to the complainant, should the contrary be the result, then the deeds were to be delivered to the defendant. Accordingly, after the election in 1840, both the deeds were delivered by the holder to the defendant.

Complainant charges, that the defendant has never paid him any thing in consideration of the deed, which he executed as above stated, but the sole inducement to its execution was the wager upon the Presidential election. Early in the year 1841, the defendant went into possession of the land thus conveyed, and has continued ever since to occupy the same : *Further,* at that time the land was in a high state of

cultivation—having about forty acres cleared, with necessary and comfortable houses, being worth ever since at the rate of one hundred dollars a year, rent. Previous to the entry of the defendant, he was notified not to take possession of the premises.

It is further charged, that the land in question was levied on by a constable of St. Clair, under an execution against the complainant; and at the spring term 1843, an order was made by the circuit court of that county, directing a sale to satisfy that execution. Under this order a sale of the land was made by the sheriff of St. Clair, on the first day of May, 1843, at which the defendant became the purchaser, for the sum ·of $29, and received the sheriff's deed. Complainant then alledges, that on the 12th March, 1845, he tendered to the defendant the amount he had paid at the sheriff's sale, with ten per cent. interest, *per annum*, together with a deed for his execution, and proposed to redeem the land according to the directions of the statute in such cases, by paying any other legal charges which he (defendant) might have thereon. But the defendant refused to receive the money, or execute the deed, without, however, objecting to the amount of the one, or the form of the other. The complainant also offered to pay to the defendant the full amount due upon a judgment recovered by Harvell, use, &c. against the complainant in the year 1840, of which he (defendant) claimed to be equitable proprietor, if he would reconvey the land to the complainant, by a deed to be prepared at the charge of the latter. But this proposition was in like manner declined, and exactions made beyond what the law or justice required complainant to comply with.

Complainant expressly states, that previous to the Presidential election of 1840, he requested the defendant to allow him to withdraw the wager he had made, and that the transaction might be cancelled; but the defendant refused to accede to this request. The deeds referred to, as having been executed or tendered, are made exhibits to the bill.

The bill, after the usual prayer that *subpœna* may issue, proposes to bring into court the several sums alledged to have been tendered to the defendant, and such other amounts, if any, as may be adjudged to be due to him. That an account

may be taken of the rents and profits of the land during the time the same has been occupied by the defendant, and that he be charged with the same: *Further*, that the deeds, copies of which are exhibited with the bill, and alledged to have been executed by the complainant, and the sheriff of St. Clair to the defendant, may be delivered up and be cancelled; and the title to the land reinvested in the complainant by an appropriate conveyance. *Lastly*, that such relief as the case requires may be granted.

The defendant answered the bill, denying that he made a wager with the complainant as alledged by him; but admits that after the presidential election of 1840 had taken place, and before the result was known, he did bet with the complainant a tract of land against a note which the latter held on him (defendant) for four hundred dollars. In the event Wm. H. Harrison was elected, respondent was to be the winner, and be entitled to the note; but if the other candidate was successful, then he was to be the loser of the land he had hazarded.

Respondent affirms that he purchased the land which the complainant is seeking to recover, and agreed to pay him therefor the sum of four hundred dollars, and as evidence thereof, gave him the note which he wagered upon the presidential election of 1840. Complainant did give a deed for the land he sold to the defendant, to be held by A. M. Byers, until the note of four hundred dollars was paid, and not as a wager; that note was won by the defendant, and voluntarily given up and cancelled by the complainant; and this the defendant considered as equivalent to a payment. Under these circumstances, Byers delivered to him the deed for the land in question. Respondent pleads in bar of this suit, that it was not commenced until after the expiration of six months from the time the note was delivered up, and the bet was consummated and settled.

Respondent permitted the complainant's mother, who is said by the son to have been his tenant, to occupy the premises in 1841, without rent, and in 1842, for a mere nominal rent. In the following year he dispossessed her by process of unlawful detainer, and has ever since retained the possession. At the time the respondent acquired possession, the premises

were greatly out of repair, and the necessary improvements put thereon are worth some thirty or forty dollars more than the rent since that time. There was not more than twenty or thirty acres of cleared land, and the houses, &c., which are particularly described in the answer, were of but little value, so that, without improvement, the land would not have yielded rent.

Respondent denies that complainant ever did forbid him to enter upon the premises in question. The proceedings in respect to the levy of the execution, issued by a justice, order and sale thereunder, it is admitted are correctly stated in the bill. *Further*, that complainant, on the 12th of March, 1845, and on the 18th of the same month, came to the defendant, and spoke of redeeming the land from the purchase made by respondent at the sale under the order of court ; but the deed presented on the first day, was not in proper form, while that shown to defendant on the latter, was unobjectionable, and he was willing to execute it ; but on neither day was any money paid or tendered. He claimed the additional sum, which the complainant objected to pay as the difference between the value of the improvements made on the land, and what would be a fair rent.

Respondent purchased the judgment in favor of Harvell, &c. against complainant, because it was of an older date than his purchase of the land : the complainant did not tender him the amount of this judgment, or any part of it, or he would gladly have received it.

Respondent denies that complainant ever offered to withdraw any bet made with him *previous* to the presidential election of 1840 ; for he made no such bet with him, or otherwise, except as above stated. By his answer, the respondent insists upon the benefit of a demurrer, and specially expresses several causes.

Afterwards, the parties entered into a written agreement, by which it was mutually agreed, that the entire bill, so far as it relates to the bet or wager, be stricken out, and that the statements of the answer upon that subject be considered as substituted in their stead : *Further*, that it be alledged this substituted matter cannot be proved by any person within the complainant's knowledge, but the defendant himself : that

complainant cannot state precisely when the defendants note for four hundred dollars became due, though he believes it was a few days after its date, in 1840, yet as he knows of no one by whom he can prove it, he calls upon the respondent to produce the note and deed.

It is also considered as alledged, that defendant has never paid any thing for the land, or on the note, and the note is still complainant's property. The bill in other respects is to remain without modification, save only, that it is to be supposed to contain the appropriate prayers for discovery and relief.

The parties agree further that the answer will be intended to contain a plea, that the offer to redeem the land was not made for more than two years after the sale by the sheriff; and to the bill thus modified the defendant is to be entitled to the benefit of a demurrer, &c.

It appears from the testimony in the cause, that the complainant proposed to pay the defendant, on the 12th March, 1845, one hundred and twenty-five dollars, or as much thereof, as would pay all defendant's demands against him, including ten per cent. on the amount paid upon the purchase made at the sale by the sheriff. But the defendant refused to execute the deed tendered to him, because it contained a general warranty, &c.—he, however, offered to convey such title as he acquired by the sheriff's deed.

Defendant refused to give up the possession of the land, although it was redeemed from the sale under the order of court, alledging that he held under another title.

Defendant was willing to execute the deed presented to him on the 18th March, if the complainants, in addition to paying the purchase money, with ten per cent, interest, would pay twenty dollars for improvements made upon the land by the defendant, or if complainant objected to this, defendant was willing that disinterested men should settle the value of improvements. But defendant said he would not give up possession of the land, although the improvements were paid for, and complainant refused to accede to his offer.

The rent of the premises for three years, was worth one hundred dollars, and the improvements made thereon was of the value of fifty dollars.

The cause was heard on the bill and answer, as modified by the agreement of the parties, and the testimony in the cause. It was supposed that the object of the bill was, 1st. To enforce the equitable lien of the complainant as the defendant's vendor. 2. To redeem the land, under the statute which confers the right of redemption upon certain persons, where lands have been sold under execution, &c.

In respect to the first point, the chancellor was of opinion that in contracts founded upon a gaming consideration, the jurisdiction of equity was not only conferred by statute, but existed independently of it ; that although the defendant acquired possession of the note, as having won it upon a bet, yet its cancellation did not amount to a payment in law, and the lien of the vendor was not extinguished. The fact that the bet was made after the election does not change the nature of the transaction, or free it from the taint of gaming.

Upon the second point, the chancellor was of opinion, that the land was the property of the defendant when it was sold by the sheriff ; that that sale passed no title to the defendant; consequently it was unnecessary to devote to it any consideration.

It was thereupon referred to the master to state an account between the parties, to ascertain and report the amount due to the complainant for purchase money and interest ; whether it will be necessary to order a sale of the whole, or a part, in order to pay it; whether it is practicable and best to sell the same in parts, or in the whole.

The master accordingly reported, 1. That the amount of the purchase money, yet due for the land described in the bill is $400, with interest since the first day of December, 1840, amounting to $151. 2. That to pay what is due, it is necessary to sell all the land, and it is best to sell it altogether—its value is not equal to the purchase money and interest. 3. The master reported that the judgment in favor of Harvell, use, &c. was still unpaid, and on the 20th August, 1845, amounted to $92 55, which in his opinion should be allowed the defendant. If the complainant is thus charged, there will remain due to him the sum of $458 45.

The defendant excepted to the report, because it disallowed as a further credit the sum paid by him upon the purchase

of the land at the sheriff's sale, but the master overruled the exception, and his decision was confirmed by the chancellor, who adjudged that the complainant recover of the defendant the sum of four hundred and fifty eight dollars and forty-five cents. *Further*, after advertising the premises in question, as in cases of sales by sheriff's of real estate, the register was ordered to sell them at public auction, at the court-house of St. Clair, for cash ; that from the proceeds of the sale he first pay the costs of this suit, then the sum due the complainant, returning the overplus, if any, to the defendant. The register was also directed to execute the deed to the purchaser, and to make report to the next term. *Lastly*, if the sale does not produce enough to satisfy the report, the residue will be collected by an execution to be issued on the decree.

Pope, for the plaintiff in error. The bill 'as amended by the agreement of the parties, is multifarious, and should have been so held on demurrer. The enforcement of the equitable lien, and the right of redemption, are matters wholly separate and distinct. [Story's Eq. Plead. p. 224, § 271, and p. 407.] It was also demurrable, because it shows that after the bet had been won by the defendant, the complainant voluntarily gave up the note *to him ;* and thus the matter was fully consummated. [Windham, use, &c. v. Childress, et al. 7 Ala. Rep. 357.] Here the defendant won *his own note,* and this distinguishes it from the cases of Roberts v. Taylor, et al. 7 Porter's Rep. 255, and Barker, et al. v. Callihan, 5 Ala. Rep. 708, where the notes of third persons were won, and the loser sought to annul the bet, before the money was collected. There, this court interfered, because the money had not been actually paid ; here the note was equivalent to a payment, and when delivered to the maker, with the intention that it should be extinguished, it ceased to be operative as a security for money.

In the case at bar, the illegal contract was consummated —nothing remained to be done to make its performance perfect ; and the right to recover what was due upon the note cannot be revived. The time for the loser to act has passed by—his election has been definitively made. To invest a third person with the *legal title* to a note, requires an indorsement,

which is in itself a contract, and requires a consideration to support it; but where the maker receives his own note, from the holder as a gift, or upon having won it, it requires no other act than the delivery to make it his property.

S. F. Rice and F. W. Bowdon, for the defendant in error, made the following points : 1. A vendor of land may, in the first instance, go into chancery, to enforce his lien for the purchase money. [Haley, et al. v. Bennett, 5 Porter's Rep. 452.] 2. If any thing else were necessary to confer jurisdiction, the winning and holding of the note by the defendant— the necessity of a discovery to ascertain its date and maturity, and the manner in which the defendant's possession was acquired, make the present a clear case for equity. Jurisdiction attaching as to these matters, complete relief will be administered.

3. The defendant acquired the possession of the note by gaming, and his title is by statute declared to be void. A delivery under such circumstances, does not amount to a payment, any more than if the amount had been paid to the complainant in counterfeit money. The title is not changed, the defendant holds the note as a trustee. [Barker et al. v. Callihan, 5 Ala. Rep. 708 ; Lake v. Gilchrist, 7 Ib. 955 ; Manning v. Manning, et al. 8 Ib. 138.] That there was a valid and subsisting debt for $400—is not denied; such a debt cannot be extinguished by a void security, or the violation of a wholesome law. [Phillips v. Cockayne, 3 Camp. Rep. 119.] 4. The bill was amended by consent, so as to make it conform to the answer, and if the proceeding was unusual, no objection lay to it; and as for the demurrer to the bill, with the substituted allegations of the answer, it is clearly not maintainable. [Mitf. Plead. 61, note (e.); Knight v. Mathews, 1 Madd. Rep. 566.]

COLLIER, C. J.—The agreement of the parties most essentially changed the frame work of the bill, and shows that the complainant was greatly at fault in the statement of his case. Instead of seeking to be reinvested with the title and possession of land, which he had lost at gaming, the complainant is understood to state as the ground upon which he

asks relief, that he had sold the land in question to the defendant for four hundred dollars, taken his note for this sum, and that the latter had won it from him. There is no special prayer adapted to the case as thus modified, and the general prayer which the bill contains, had no reference to it, and would not authorize the relief which it requires. It is however part of the agreement, that the bill shall *be supposed to contain the appropriate prayers for discovery and relief*; and we can conceive of no relief, (if there be any other,) so well adapted to the case as the subjection of the land to the payment of the purchase money. Of the statements in respect to the defendant's purchase of the land at sheriff's sale, and of his being the proprietor of a judgment in favor of Harvill, use, &c. v. the complainant, no prayer for relief is, or can be predicated; they may be considered by the court in determining the measure of redress it will grant. We must then look at the case under its modified phase, as an application for the enforcement of an equitable lien; and in this view we propose to consider the cause.

The act of 1807 declares, "all promises, agreements, notes, bills, bonds, or other contracts, judgments, or other securities, or other conveyances whatsoever, made, signed, given, granted, drawn, or entered, or executed by any person or persons whatever," the consideration of which, either in whole or in part, is founded in gaming, betting, or wagering, to "be utterly void and of no effect to all intents and purposes whatsoever." [Clay's Dig. 257, § 1.] In Roberts v. Taylor, et al. 7 Por. R. 251, it was said the winner of a note can be considered in no other light than that of a trustee for the true owner, and a bill was sustained enjoining the maker from paying to him the money due thereon; "and it may well admit of doubt, on principle, though the weight of authority is against it, whether, independent of all statutory regulation, even money won at play, may not be recovered back." Mr. Justice Story thinks such is the law, "independent of any statutable provision." [2 Com. on Eq. 303.] In the case cited, it was decided, that the indorsement of a note or bond was a contract within the terms of the act; and in Barker, et al. v. Callihan, 5 Ala. Rep. 708, we said, "it is true that the notes were transferred by delivery merely, but this is not less a

contract than if they had been indorsed. It is an agreement within the terms of the statute, that the persons to whom the notes were delivered should be their proprietors, and receive the money thereupon : and if intended to pay losses sustained at the gaming table, is void, and passed no property in the notes to the winners." See also, Wood v. Duncan, 9 Porter's Rep. 227; Fenno v. Sayre & Converse, 3 Ala. Rep. 766; Cheatham v. Young, 5 Ala. Rep. 353; Manning v. Manning, et al. 8 Ib. 138.

The counsel for the plaintiff in error · does not controvert the authority of the cases cited, but insists that they are inapplicable to the present; that there the winners of the notes were not the makers, and they had not been paid; but here, the maker was the winner of his own note, and it had been delivered up to him, and the illegal transaction consummated. A note for the payment of money evidences the indebtedness of, the maker, but the debt exists independently of the note, and may be recovered, though the note be lost or destroyed. True, if the maker is in possession of it, the presumption is, that he has paid it, and it devolves upon the payee, if he insists it has not been discharged, to prove it. What amounts to a payment, is a question of law depending upon the facts and circumstances of the case. Payment in forged paper, or base coin, in general is not good. [U. S. Bank v. Bank of Georgia, 10 Wheat. Rep. 333; Eagle Bank v. Smith, 5 Conn. Rep. 71; Markle v. Hatfield, 2 Johns. R. 455.] So a payment in the bills of a bank insolvent at the time, or in unproductive paper, it has been held is not a satisfaction of the debt. [Ontario Bank v. Lightbody, 13 Wend. Rep. 101; Davidson v. Bridgeport, 8 Conn. Rep. 472.] And upon common law principles we incline to think that a debt is not discharged by winning as a wager the writing by which it is evidenced. But we need not consider what would be the effect of such a transaction upon the rights of the creditor, without reference to legislation upon the subject. The terms of the act of 1807 are exceedingly comprehensive. It declares void " all promises, agreements, notes, bills bonds, or other contracts," &c. "for money, or other valuable thing whatsoever," founded in " gaming, betting, or wagering." In the case before us, there was certainly an agreement, in

Foreman v. Hardwick.

advance of the delivery of the note to the defendant, that it should be thus disposed of, if the complainant should have miscalculated the event upon which the parties laid their wagers. Giving up the note, we have seen, does not extinguish the debt, and if the agreement was void, can have no effect upon the complainant's rights; it is therefore competent for him to assert his right to recover the purchase money, by praying that his equitable lien may be enforced. [See Haley, et al. v. Bennett, 5 Porter's Rep. 452; Foster v. The Trustees of the Athenæum, 3 Ala. Rep. 302; Roper v. McCook, and another, 7 Ala. Rep. 318.] These conclusions seem so reasonable to us, as not to require further illustration; and it follows that the plaintiff is entitled to a decree giving to him the benefit of his equitable lien.

The remaining question then is, should the master have reported in favor of the allowance to the defendant of a credit of twenty-nine dollars, the amount at which he bid off the land, at the sale under the order of court, consequent upon a constable's levy. It is certainly correct as a general rule that one person cannot make another his debtor against his consent. [2 Stewart's Rep. 500.] But in the present case the defendant cannot be regarded as a mere volunteer in the payment of the judgment. True, it operated no lien upon the land, and his title could not have been disturbed by it, or any one purchasing under the order made upon the levy, yet a cloud might have been thus thrown over his title, and he involved in litigation, the cost of which, (to say nothing of trouble and anxiety,) would have been more than the amount bid. Under these circumstances, we think the master should have made the allowance to the defendant. The complainant was seeking equity, and he should have been required to do equity himself. *Besides*, would not a court of equity, in such a case, where the amount in controversy was sufficient to induce it to take jurisdiction, set aside the return of satisfaction, and give to the defendant the benefit of an execution in the name of the plaintiff in the judgment, for his own reimbursement, sooner than force him to submit to a cloud being cast over his title by a third person becoming the purchaser? Be this as it may, as the complainant who has received the benefit of the money advanced by the

defendant, is now an actor, he should be forced to reimburse it. The decree will therefore be here reversed, and rendered according to the principles of this opinion, at the costs of the defendant in error.