## GUNTER *vs.* LECKEY.

[TROVER FOR CONVERSION OF SLAVES.]

1. *Effect of illegal contract.*—Where the plaintiff cannot establish his cause of action, without relying on an illegal contract, he cannot recover.

2. *Difference between sale and exchange.*—A contract, by which the title and possession of a slave are transferred for a valuable consideration measured in money terms, is a sale, whether the consideration be paid in money, or in something agreed upon as its equivalent; but a contract, by which the owner of two slaves transfers them to another, in consideration of two other slaves and one hundred dollars in money, the price or value not being measured in money terms, is an exchange.

3. *Construction of penal statute.*—A statute which is penal in its nature, or in derogation of a common-law right, is not to be extended by construction.

4. *Construction of statute (Code, §§ 399, 400) respecting sale of slave by unlicensed negro-trader.*—Under sections 399 and 400 of the Code, which are penal statutes, and derogatory of a common-law right, a sale of a slave by a negro-trader, without license, is illegal and void; but the statute does not apply to an exchange of slaves, where the price or value is not estimated in money terms.

5. *License to negro-trader.*—A license to a negro-trader, (Code, §§ 397-400,) granted by any probate court in the State, is valid in every county in the State.

6. *Charge invading province of jury.*—Where a cause is tried on an agreed statement of facts, which contains no admission of a fact essential to the defense, a general charge in favor of the defendant is an invasion of the province of the jury.

APPEAL from the Circuit Court of Lawrence.

Tried before the Hon. SYDENHAM MOORE.

THIS action was brought by William Gunter against William D. Leckey, to recover damages for the conversion of two slaves, named Addison and Harriet. The defendant pleaded, in short by consent, 1st, not guilty; 2d, that plaintiff, on the 25th November, 1853, in this State, being then a negro-trader, sold said two slaves to defendant without a license; 3d, that plaintiff, on the day last mentioned, and in said county, being a negro-trader, and then and there engaged in the business of selling slaves, sold and delivered to plaintiff, without a license, two other slaves, named Mary and Eliza, and received in part pay-

ment for them the slaves mentioned in the complaint; 4th, that plaintiff, on said 25th November, 1853, and in said county, being then and there a negro-trader, and engaged in the business of selling slaves, sold and delivered to defendant, without a license, the two slaves Mary and Eliza, for the sum of $1,900, and received from defendant, in payment of said slaves, $100 in money and the slaves mentioned in the complaint.

The cause was tried, as appears from the bill of exceptions, on an agreed statement of facts, which was as follows:

"It is admitted that, in November, 1853, the plaintiff was a negro-trader, and, as such, sold to defendant, in Lawrence county, Ala., two negroes, named Mary and Eliza, and, in payment therefor, received the negroes Addison and Harriet, for the conversion of which this suit is brought, and $100 in money; that plaintiff afterwards went to defendant's premises in said county, in defendant's absence, and took therefrom, without his knowledge or consent, the two negroes first above named, and left on defendant's premises the two negroes last above named; that shortly afterwards, meeting with defendant, he told him what he had done, and offered to return to him the $100 paid by defendant as aforesaid, which defendant refused to accept; that afterwards, and before this suit was brought, defendant sued plaintiff in detinue for said negroes first above named, and recovered them in said action, and now has them in his possession; that defendant also has in his possession the negroes now sued for, and has had them since they were left in his possession by plaintiff as aforesaid. It is admitted, also, that at the time of the said trade between plaintiff and defendant, plaintiff had no license, granted by the probate court of said county of Lawrence, to sell or offer for sale said negroes so sold and traded by him to defendant; that the slaves Mary and Eliza went into defendant's possession at the time of said sale, and the slaves Addison and Harriet went into plaintiff's possession under said sale, and remained in his possession until he returned them to defendant's possession as above stated; that defendant

recovered a judgment against plaintiff, in said action of detinue for the slaves Mary and Eliza, at the September term of said court, 1854, which is hereby referred to and incorporated as a part of this agreement. It is further admitted that the negroes now sued for are worth $1200; that plaintiff demanded said negroes of defendant before the institution of this suit, and defendant refused to give them up; and that plaintiff, when he took said negroes Mary and Eliza from plaintiff's possession, and left in his possession the slaves Addison and Harriet, did so because he thought himself defrauded in the trade, and erroneously supposed that he had the right to rescind the trade, and did so with the intention, as declared by him at the time, of rescinding the trade."

"Thereupon the court charged the jury, that if they believed the aforesaid state of facts to be true, they must find a verdict for the defendant; to which charge the plaintiff excepted," and which he now assigns as error.

DAVID P. LEWIS, for appellant, made these points:

1. The statute on which the defense is founded must be strictly construed.—Bettis v. Taylor, 8 Porter, 572; Crawford v. The State, Minor, 143; United States v. Wrigglesworth, 2 Story, 369; 6 Watts & Serg. 269; 3 Pick. 229; 9 Pick. 412; 7 B. & C. 569; 6 ib. 712; 10 ib. 527; 3 Bing. 580; 2 Wheaton, 119; 5 Wheaton, 76–96; 1 Gall. C. C. 114.

2. The transaction shown by the admitted facts is not within the statute. The statute applies only to sales, not to exchanges; while the facts show an exchange. The distinction between the two kinds of contracts is clear and well-defined.—1 Parsons on Contracts, 436, c; Chitty on Contracts, (4th Amer. ed.) 297; Smith on Contracts, 330; Sheppard's Touchstone, 290; 2 Greenleaf's Cruise's Digest, title 32, ch. 9, §§ 4, 19; Jackson v. Delancey, 4 Cow. 427; Vail v. Strong, 10 Vermont, 57. Nor is the contract within the mischief intended to be guarded against. It did not increase the number of slaves in the State, nor diminish the number in plaintiff's possession on which he was required to pay license. If Gunter brought but two

slaves into the State for sale, he cannot be required to pay license on four.

3. If the contract be within the statute, it is no obstacle to plaintiff's recovery. His right of action is independent of the contract. He has a right to recover on his possession alone, without disclosing the means by which he acquired that possession.—Armstrong v. Toler, 11 Wheaton, 258, and cases therein cited; Theobald on Principal and Surety, 387.

4. Whenever the title to property has passed by an executed contract, it cannot be revested by capture, nor by any other mode of acquiring possession.—Windham v. Childress, 7 Ala. 358; Rochelle v. Harrison, 8 Porter, 357. If Gunter had hired out the slaves to any other person than Leckey, could it be contended that a recovery might be defeated on this ground?

5. Although the contract be within the statute, it is not available as a defense in this case. The purchaser can only take advantage of the statute in the particular mode pointed out; that is, by action to recover the purchase-money, commenced within the specified time.

6. The *onus* was on the defendant.—State v. Hayward, 2 Gall. C. C. 485.

L. P. WALKER, and P. L. LIGON, *contra.*—1. The contract between the parties was a sale, and not an exchange. Smith on Contracts, 330; Sheldon v. Cox, 3 Barn. & Cress. 420; Smith v. Clark, 21 Wendell, 83; Foster v. Pettibone, 3 Selden, 433.

2. Whether the transaction, technically considered, was a sale or an exchange, it is equally within the statute, which was intended to prohibit all speculation and trading in slaves by the persons designated. To exempt a technical exchange from the operation of the statute, would be to allow that to be done indirectly which cannot be done directly.—13 Ala. 29.

3. The contract, being prohibited by statute, is illegal and void.—Givens v. Rogers, 11 Ala. 546; McGehee v. Lindsay, 6 Ala. 20; Smith v. Mawhood, 14 Mees. & W. 452; Cope v. Rowlands, 2 Mees. & W. 157; Milne & Co.

v. Huber, 3 McLean, 214 ; Hale v. Henderson, 4 Humph. 199 ; Bell v. Leggett, 3 Selden, 176.

4. An action cannot be maintained in affirmance of an illegal contract, or to enforce a right growing out of such contract; though a recovery may be had in disaffirmance of such contract, or to prevent the defendant from retaining a benefit derived from it.   The true test is, whether the plaintiff requires the aid of the illegal transaction to establish his claim.—McGehee v. Lindsay, 6 Ala. 22 ; 8 Cowen, 24; 14 Mees. & W. 452.

RICE, C. J.—Section 399 of the Code ˌdeclares, that if any person, "being a negro-trader, broker or agent for the sale of slaves, *sells*, offers, or exposes for *sale*, any slave, without first obtaining a license therefor from the proper authority, he is guilty of a misdemeanor, and, on conviction, must be fined not less than the State tax as fixed in this article for such license."   Section 400 declares, that, "in addition to the penalties provided by the preceding section, *the sale* of a slave by a negro-trader, broker, or agent for *the sale* of slaves, is void as to the seller, and *the purchase-money* may be recovered back, by action commenced within. one year from *the payment thereof.*"

Beyond doubt, "*the sale* of a slave by a negro-trader," in this State, without a license therefor duly obtained, is illegal; and whenever such trader is the plaintiff in an action, if he is unable to establish his claim, as stated upon the record, without relying upon such illegal sale, or if he requires any aid from it to establish his case, he cannot recover in a court of law.—McGehee v. Lindsay, 6 Ala. 16 ; Booth v. Hodgson, 6 Term R. 405; Simpson v. Bloss, 7 Taunton, 246 ; Firaz v. Nicholls, 2 Man. Gran. & Scott, 500 ; Phalen v. Clark, 19 Conn. 421 ; Harris v. Runnells, 12 How. (U. S.) R. 70 ; Smith v. Mawhood, 14 Meeson & Welsby, 452.

The main question in this case is, whether the transaction disclosed by the facts admitted by the parties, is *a sale* within the meaning of the statutory provisions above quoted.

Upon authority it is settled, that there is a difference between a sale and an exchange, or a bargain of barter.—2 Bla. Com. 446; Chitty on Con. (ed. of 1851), 332; 1 Parsons on Con. 436, and note (c); Hilliard on Sales, 8; Story on Sales, 1. A contract of barter, or exchange, cannot be changed into a contract to pay money, unless the parties come to a fresh agreement to that effect.—Harrison v. Luke, 14 Meeson & Welsby, 139.

In the appendix to Smith on Contracts, 330, (56th vol. of Law Library, top page, 151,) the sense in which we think the word sale was used in the statutory provisions above cited, is expressed with more fullness and accuracy than in any other book which has come under our notice. The expressions there found are the following: "Sales include all agreements, by which property is parted with for a valuable consideration, whether there be a money payment or not; provided that the bargain be made, and the value measured in money terms. For instance, it includes all cases where there is a transfer of credit, by which means the great bulk of commercial dealings is effected. Money itself very rarely passes, except in the small retail purchases of life. Even where checks are drawn and paid, it frequently happens that no money passes. In the clearing-house in the city, where the London bankers exchange checks drawn on them against each other, payments amounting to many millions sterling are thus made every week, by means of a simple transfer of credit from one banking-house to another. Contracts of sale, therefore, are by no means limited to sales for money; but on the other hand, neither do they extend to bargains of barter. Where one article or set of goods is intended to be exchanged for another, no price (*pretium*) being attached, it is not a sale, for the transaction is, in the first instance, made as an exchange of goods, without reference to money payment."—See Williamson v. Berry, 8 Howard's (U. S.) Reports, 544.

A transaction, whereby the title and possession of a slave is parted with for a valuable consideration, whether there be a money payment or not, provided that the bargain be made and the value measured in money terms,

and paid or agreed to be paid in something which the parties agree to treat as a specified amount of money, is a sale within the meaning of the statute above cited. But a transaction, whereby A. transfers to B. two slaves, and receives therefor from B. two slaves and one hundred dollars, no price being attached, and no value measured in money terms, is not a sale within the meaning of the statute. One of the essential ingredients of the sale contemplated by the statute, is, that the value be measured in money terms.—2 Kent's Com. 468, 477, and authorities cited *supra*.

It is entirely competent for one person, who desires to sell another a slave, to agree with him as to the value measured in money terms, and at the same time to agree to receive another slave as a specified part of that value, and the other part in money; and when such agreement is made and executed, the transaction is a sale within the meaning of the statute. In such case, the slave received as a specified part of the fixed price or value would, by the law, be deemed as so much money paid; and the agreed price of the slave, so received in payment, could be recovered back as so much of "purchase-money," if the seller was a negro-trader, and had no license, and was sued by the buyer, in the mode, and within the time mentioned in the statute. The principle would apply, that if a thing be received as a specified sum of money, and the parties agreed to treat it as so much money, the party receiving it shall not, when sued for it as money received, defeat a recovery, by alleging or proving that in fact money was not received.— Stewart v. Conner, 9 Ala. 803 ; Cameron v. Clarke, 11 Ala. 259; Pickard v. Banks, 13 East's Rep. 20.

To bring the transaction within the statute, it is not enough to show that the unlicensed negro-trader received a sum of money, *and some other valuable thing*, for his slaves. It must be shown, also, that the other valuable thing received by him was, by the terms of the transaction, received or treated as money, and as an ascertained or specified part of the agreed price of his slaves.

The statute is penal in its nature, and in derogation of

a common-law right. It is not therefore to be extended, or made more penal by construction. Without disregarding salutary rules, we cannot believe or declare that the word sale, as therein used, was used in a more comprehensive sense than we have given to it in what we have above said.

The bill of exceptions in this case states, that it was admitted, that "the plaintiff was a negro-trader, and, being such, he *sold* to defendant, in Lawrence county, Ala., two negroes named Mary and Eliza, and in payment therefor received the negroes Addison and Harriet, for the conversion of whom this suit is brought, and one hundred dollars in money." But the bill of exceptions does not show that any price was fixed upon the first mentioned negroes, nor that the plaintiff received or treated the last mentioned negroes as a specified sum of money, or as money at all. When the facts of the transaction are admitted, as in this case, the question whether it amounts to a sale is a question of law. That question must be determined, not from the name which the parties give to the transaction, but from the facts which demonstrate its nature and character.—Foreman v. Hardwick, 10 Ala. 316. And although the parties here call the transaction, as set forth in the bill of exceptions, a sale, we feel bound to declare that, in the contemplation of the statute, it is not a sale. Whether, on another trial, the evidence may not show that the transaction was a sale, we cannot say. But upon the facts, as disclosed on the record now before us, the court below erred in its charge in treating the transaction as a sale within the meaning of the statute above cited.

As the cause must be remanded, we deem it proper to say, that there is another error in the charge. It was admitted that the plaintiff had no license, *granted by the probate court of Lawrence county*. But there was no admission that he did not have a license from some other probate court. A license to sell slaves, granted by any probate court or probate judge in this State, is good in every county in the State. Now, although the jury might have been authorized, from the admission made, and from the failure of

the plaintiff to produce any license, to infer and find that he had no license; yet it was not *a conclusion of law,* from the facts stated, that he had no license. The court erred, therefore, in not leaving to the jury the question of the existence or non-existence of the license. *The non-existence of the license* was one of the matters, essential to the defense; and as it was neither admitted, nor stated as a fact in the testimony, the court erred, in charging that, if the jury believed the state of facts set forth in the bill of exceptions, they must find for the defendant. It will not do for the court to overlook the distinction between facts admitted, and the inferences which the jury only are authorized to draw therefrom.

For the errors in the charge of the court below, pointed out in this opinion, the judgment is reversed, and the cause remanded.