# Alabama Great Southern Railroad Company *v.* McAlpine & Co.

*Action against Railroad Company for Damages to Stock.*

1. *Injury to stock by railroad company; allowing stock to run at large not contributory negligence.*—Apart from the influence of any special

35

[Alabama Great Southern Railroad Co. v. McAlpine & Co.]

statute, the law in this State is, that it is not such contributory negligence for the owner of stock to suffer them to run at large, as to prevent him from recovering damages for injuries negligently done to them by persons or corporations owning or controlling railroads.

2. *Same; rule as to contributory negligence not changed by local act of February 28, 1881 (Pamph. Acts, 1881–1, p. 223).*—This rule as to contributory negligence in such cases is not changed by the act of February 28th, 1881 (Pamph. Acts, 1880–1, p. 223), making it unlawful for stock to run at large in a designated territory, subjecting the owner to damages committed by such stock to the lands, crops, etc., and declaring the owner or manager of stock who knowingly suffers them to run at large guilty of a misdemeanor.

3. *Same; owner of stock allowing them to run at large in violation of local statute, not debarred of right of recovery.*—The fact that the owner of stock, in allowing them to run at large, is guilty of a violation of a local statute, making it unlawful for stock to run at large within a designated territory, does not preclude him from recovering damages against a railroad company for injuries done to the stock within such territory, while at large, by defendant's train. In such case the plaintiff's unlawful act did not contribute to the injury, and he does not require any aid from it to establish his cause of action.

4. *Railroad corporations; degree of diligence required.*—The law exacts of railroad companies, and other common carriers, in their use of steampower, extraordinary diligence, or " that degree or diligence which very careful and prudent men take of their own affairs "; and while there are authorities which confine this rule of diligence to the transportation of passengers, such is not the law in this State.

5. *Same; blowing whistle or ringing bell before reaching station or public road.*—Under the statute (Code of 1876, § 1699,) no duty is imposed on the engineer in charge of a locomotive running on a railroad to blow the whistle or ring the bell until the locomotive comes within one-fourth of a mile of a road-crossing or regular depot or stopping place; and hence, a charge, given at the request of a plaintiff in an action against a railroad company for damages to stock, which assumes the existence of such duty at a time when the statute does not require its observance, is erroneous.

APPEAL from Greene Circuit Court.

Tried before Hon. SAMUEL H. SPROTT.

This was an action by J. A. McAlpine & Co. against the Alabama Great Southern Railroad Company, a corporation operating a railroad in this State, to recover damages for injuries alleged to have been done to a mare and mule, the property of the plaintiffs, by the defendant's locomotive and train of cars, through and by reason of negligence and want of care of defendant's agents in the management and running of said locomotive and train. The facts bearing upon the principal question decided are sufficiently stated in the opinion. The evidence introduced on the trial showed that the mare was fatally injured, and the mule killed at different times, and at different places on defendant's track, by being run against and thrown from the track by locomotives attached to defendant's regular passenger trains. The evidence tended to show that the mule was killed by a locomotive attached to a train going north-east, about three hundred and eighty-four yards south-

[Alabama Great Southern Railroad Co. v. McAlpine & Co.]

west of Boligee, a regular depot or station on defendant's road, at which station or depot a public road crossed defendant's track; that "the signal post at or near which the whistle' for the station and crossing is usually blown," was about four hundred .and ten yards further south-west, thus making "the signal post" about seven hundred and ninety-four yards from said station and crossing, and that "the engineer, at the usual place for giving the signal for the station, blew one blast for the station, and also, in connection therewith, three blasts for the public road crossing."

The second charge given at the request of the plaintiff, referred to in the opinion, is in these words: "If the jury believe from the evidence that the injury to the mule occurred about 384 yards south of the regular depot or stopping place at Boligee and the public road crossing at that place, and that the engine or train which committed the injury was going north, and that the whistle was not blown or bell rung for 200 yards or more before the engine or train struck the mule, then such failure to blow the whistle, or ring the bell within the space of 200 yards or more south of where the mule was killed, was, of itself, negligence, and authorizes the jury to find for the plaintiffs so far as the mule is concerned." To the giving of this charge the defendant excepted.

The defendant also reserved an exception to the refusal of the court to give the following charge at its written request: "If the jury believe from the evidence that the defendant was in the possession of the right of way where said mare and mule were killed or injured, and was running its train on its right of way, and that said stock were on defendant's track, and defendant used ordinary care and diligence to prevent the damage complained of, then the plaintiffs can not recover; and if the evidence satisfies the jury that the speed of the train was checked while approaching the animals, the mere fact that the train was not stopped does not tend to show a want of care and prudence." The trial resulted in a verdict and judgment for the plaintiffs, from which the defendant appealed. The charge given and the charge refused, and the rulings on the evidence indicated in the opinion are among the errors here assigned.

T. C. Clarke, J. P. McQueen and Wood & Wood, for appellant. (No brief came to the hands of the reporter.)

Head & Butler, with whom was H. M. Judge, contra. (1) It is a well settled rule of law that negligence or unlawful conduct of the plaintiff does not excuse the defendant's negligence, unless it was the *immediate, proximate* cause of the injury.—*Foster v. Holly*, 38 Ala. 76, and authorities there

cited; *Marble v. Ross*, 124 Mass. 44; *O'Brien v. McGlinchey*, 68 Me. 552; *C. & St. L. R. R. Co. v. Woolsey*, 85 Ill. 370; *C. & St. L. R. R. Co. v. Murray*, 82 Ill. 76; *Blanc v. Chesapeake R. R. Co.*, 9 W. Va. 252; *Baylor v. B. & O. R. R. Co.*, 9 W. Va. 270; *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621. An examination of the New York, Pennsylvania, Kansas and Kentucky cases, which appear to be opposed to the appellees' position in this case, will show that they ignore the principle that the plaintiff's negligence must be the proximate cause of the injury.—See *Clark v. R. R. Co.*, 11 Barb. 112; *R. R. Co. v. Rehman*, 49 Pa. St. 101; 14 B. Mon. 75. (2) It is contended that, because it is unlawful for stock to run at large, the violation of this law, in every case of injury to stock, is the *proximate* cause of the injury, and excuses the negligence of the party committing the injury. This question was before this court in *Jones v. Alabama Great So. R. R. Co.*, at December term, 1880 [not reported], under the act found in Pamph. Acts, 1871–2, p. 379. Under that act it was unlawful for stock to run at large, yet this court held that the act had no reference to the liability of railroad companies for negligence. (3) Our statutory system was intended to guard stringently the interests of property holders along the lines of railroads, and to protect their property from injury by railroads.—Code, 1876, §§ 1700, 1712. The special act in question was manifestly designed for the particular benefit and convenience of agriculturists, not mentioning railroads. It was not intended that this act should engraft an exception upon the general law as to the liability of railroad companies for injuries to stock. (4) The charge given was in accordance with the statute. Code, 1876, §§ 1699, 1700; *M. & C. R. R. Co. v. Williams*, 53 Ala., p. 599.

SOMERVILLE, J.—This action is one for damages, for the alleged negligent injuring of certain stock by the servants of the defendant railroad company. The stock—a mule and a horse—were running at large within that portion of Greene county which is included in the provisions of the act of February 28, 1881, entitled "An Act to prevent the running at large of stock in certain portions of Greene county." This act declares it "*unlawful* for stock of any kind or description whatever to run at large" within a designated part of the county, and makes the owner liable to the party injured for any damages committed by said stock to any lands, crops, fruit trees, shrubbery, or other property" within the specified district. The owner, or manager of any stock, who knowingly suffers it to run at large, is, furthermore, declared guilty of a *misdemeanor*.

VOL. LXXI.

[Alabama Great Southern Railroad Co. v. McAlpine & Co.'

The principal question for decision is, whether a plaintiff, who suffers his stock to run at large within the prohibition of this act, is debarred from recovering damages for its negligent injury.

Apart from the influence of this special act, the law is unquestioned, that it is not such *contributory negligence*, in this State, for the owner of stock to suffer it to run at large, as to prevent him from recovering for any damage negligently done to it by persons or corporations, owning or controlling railroads. Section 1712 of the present Code (1876) expressly declares that, in such cases, "permitting live stock or cattle of any kind to run at large shall not be considered as *contributing* to such killing or injury." This would no doubt be the law without the statute, upon the ground that the negligence of the owner in such cases is rather the *remote* than the *proximate* cause of the injury, and can not, therefore, be regarded as contributory negligence.—*South & North R. R. Co. v. Williams*, 65 Ala. 74; *Gothard v. The Ala. G. S. R. R. Co.*, 67 Ala. 114.

Does the special act above cited operate to change this principle? This question, in our opinion, is settled in the negative by the case of *Jones v. The Ala. G. S. R. R. Co.*, decided at the December term, 1880 [not reported], in which we construed a similar act, approved February 14, 1872 (Acts 1871–72, p. 379), holding that it was "confined to the protection of growing crops, and had no reference to the liability of railroad companies." We see no reason for departing from the doctrine of this decision, believing, as we do, that the cases to which we are cited by appellant's counsel, in support of the opposite view, are unsound in their reasoning, as well as repugnant to the rule of contributory negligence declared in such cases by our statute.

It is insisted that the plaintiff was guilty of an *unlawful act* in suffering his stock to run at large, and that this debars his right of recovery. The rule, however, is, that "to deprive a party of redress because of his own illegal conduct, the *illegality* must have *contributed to the injury*."—Cooley on Torts, 155. The fact of illegality here renders the act of permitting the stock to run at large neither more nor less *contributory* to the injury, or *proximate* as a cause of it.—Wharton on Neg. §§ 995, 331. The relation of the act to the injury complained of would be precisely the same, whether it was legal or illegal. It would have no more tendency to produce the injury in the one case than in the other. This is the better and sounder rule recognized in the case of injuries or accidents happening in the violation of Sunday laws.—Sherman on Neg., § 39; Whart. on Neg., § 331; *Platz v. City of Cohoes*, 42 Amer. Rep. 286. "The same natural causes," as observed by a learned court,

" would have produced the same results on any other day, and the time of the accident or injury, as that it was on Sunday, is wholly immaterial so far as the cause of it, or the question of contributory negligence is concerned."—*Sutton v. Wauwatosa,* 29 Wis. 21; *Mohney v. Cook,* 26 Penn. St. 342; *Woodman v. Hubbard,* 25 N. H. 67; *Philadelphia, &c., R. R. Co. v. Towboat Co.,* 23 How. (U. S.) 209. "The fact that a party injured," says Mr. Cooley in his works on Torts, "was at the time violating the law, does not put him out of the protection of the law; he is never put by the law at the mercy of others." Cooley on Torts, 157.

The precise question under consideration has been decided, in accordance with the foregoing views, several times by the Supreme Court of Illinois.—*C. & St. L. Railroad Co. v. Woosley,* 85 Ill. 370; *Ewing v. C. & A. R. Railroad Co.,* 72 Ill. 25, and cases cited.

It is clear that, in all such cases, the plaintiff requires no *aid* from the illegal part of the transaction in order to establish his cause of action, and this is the test of recovery, both in actions *ex delicto* and *ex contractu.*—*Holt v. Green,* 73 Penn. St. 198; *S. C.* 13 Amer. Rep. 737. He is debarred from recovery only when he can not prove his cause without being "obliged to lay the foundation of his action in his own violation of the law."— *Way v. Foster,* 1 Allen, 408; *Gunter v. Leckey,* 30 Ala. 591.

Under these views there was no error in the action of the court excluding the act of February 28, 1881, under consideration, from being given in evidence to the jury, or in the rulings of the court touching its relevancy to the case.

The rule has been frequently declared by this court, in accordance with the generally recognized doctrine, that the law exacts of railroad companies, and other common carriers, in their use of steam power, extraordinary diligence, or "that degree of diligence which very careful and prudent men take of their own affairs."—*M. & M. Railway Co. v. Blakely,* 59 Ala. 471; *Cook v. C. R. R. Co.,* 67 Ala. 533; *Tanner v. L. & N. R. R. Co.,* 60 Ala. 621; *Grey's Ex'r v. Mobile Trade Co.,* 55 Ala. 387. There was no error in refusing the charge, requested by the defendant, exculpating the company from liability on the condition of having used only *ordinary* care and diligence. There are authorities which confine this rule of diligence to the transportation of *passengers,* but such is not the law in this State.

The court erred, however, in giving charge numbered *two* requested by the plaintiff. The statute (Code, § 1699,) requires the engineer, in control of a locomotive, "to blow the whistle or ring the bell, at least *one-fourth of a mile* before reaching

[Rice & Wilson v. Jones & Bro.]

any public road crossing, or any regular depot or stopping place, and to "continue to blow such whistle or ring such bell, at intervals," until he passes such road crossing, or reaches such depot or stopping place.—Code, 1876, § 1699. It is plain that no *duty* is imposed on the engineer to blow the whistle or ring the bell at all, until the locomotive comes within one-fourth of a mile, which we judicially know to be four hundred and forty yards, of the road-crossing or the depot, as the case may be. Any conformity to the statutory requirement, prior to this time, is entirely optional, and not peremptory. The vice of the charge in question is, that it assumes the existence of the duty at a time when the statute does not require its observance.

The judgment of the Circuit Court must be reversed and the cause remanded.