(94 South. 252)

ATLANTA & ST. A. B. RY. CO. v. HODGES.
(4 Div. 752.)

(Court of Appeals of Alabama. Nov. 14, 1922.)

**1. Appeal and error ⬅1056(2)—Exclusion of immaterial evidence held not prejudicial.**

In an action against a railroad company for killing plaintiff's bull on the track, it was not prejudicial error to exclude a statement of the engineer, after testifying that he applied his brakes in emergency and opened the sand and air valves, that "it also might be dangerous," regardless of whether the remark meant that it was dangerous to do what he did to stop the train or that it was dangerous to run over the bull; the mere possibility of danger as testified to being immaterial in either event.

**2. Appeal and error ⬅237(2)—Admission of evidence not reviewable in absence of motion to strike.**

Where incompetent evidence is admitted, a motion to strike is necessary to bring the question before the appellate court.

**3. Railroads ⬅447(7) — Instructions on care as to animal on track held correct.**

A charge in the language of Code 1907, § 5473, stating that an engineer, on perceiving an animal on the track, must use all means in his power known to skillful engineers, such as applying brakes and reversing 'engine, to prevent the injury, held correct.

**4. Trial ⬅142, 143—When affirmative charge properly given stated.**

Whenever a conflict exists in the evidence as to, material facts in the case or when the evidence is of such character as to reasonably support different conclusions therefrom, the af-

firmative charge cannot be given, but, if only one reasonable conclusion can be drawn from the evidence, it is proper that the affirmative charge be given on such evidence if the same is believed by the jury.

**5. Railroads ⬅446(2) — Negligent killing of hog on track held question for jury.**

Evidence that plaintiff found his hog on defendant's railroad track between bloody rails with its nose and two of its feet cut off held to justify a finding by the jury that the hog was killed by locomotive or cars, making out a prima facie case warranting a refusal of an affirmative charge for defendant.

**6. Railroads ⬅441(2)—Killing of animal on track held to cast burden of proof on company.**

Where the evidence showed without dispute that plaintiff's bull was killed by defendant's train, such facts made out a prima facie case in favor of plaintiff and cast upon defendant the burden of acquitting itself of negligence, in view of Code 1907, § 5476.

**7. Railroads ⬅446(10)—Lookout as to animal on track held for jury.**

Whether defendant's engineer maintained a lookout and whether he saw plaintiff's bull in time to prevent injury held for the jury.

**8. Railroads ⬅446(10)—Negligent killing of bull on track held for jury.**

Evidence by defendant's engineer that he saw plaintiff's bull near the track 150 feet away, but that he did not attempt to stop until he was within 100 feet of the bull then on the track, and in fact did stop within 30 feet after striking the animal, held to warrant the refusal of an affirmative charge requested by defendant.

**9. Railroads ⬅415(1½) — Failure to equip train with headlight enabling engineer to see cattle negligence.**

Failure to equip a train with a headlight such as would enable the engineer at 8 o'clock p. m. to see cattle on the track, or in dangerous proximity thereto, on his side, at such a distance ahead on a straight track as to enable the employés running the train to avoid injury to the animals, constitutes negligence.

**10. Appeal and error ⬅655(2)—Bill not presented to trial judge within 90 days will be stricken.**

Where a purported bill of exceptions was not presented to the trial judge within 90 days, as required by law, it will be stricken from the files.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Action for damages by H. C. Hodges against the Atlanta & St. Andrews Bay Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Espy & Hill, of Dothan, for appellant.

The giving of the charge, at plaintiff's request, to the effect that, if the engineer did not reverse his engine and the failure to

---

reverse was the cause of the killing of the bull, then the plaintiff was entitled to recover, was reversible error. 153 Ala. 139, 44 South. 963, 14 L. R. A. (N. S.) 261. The defendant was due the general affirmative charge. 179 Ala. 162, 59 South. 640, 46 L. R. A. (N. S.) 430; 78 South. 416; 80 South. 880; 90 Ala. 46, 8 South. 57; 19 South. 519.

Farmer, Merrill & Farmer, of Dothan, for appellee.

The cause was tried on August 16, 1921, and the bill of exceptions was presented to the trial judge November 15, 1921. Not being presented within 90 days, there is no bill of exceptions. 184 Ala. 598, 64 South. 69. The bill of exceptions, not having been presented within 90 days from the date of trial, cannot be looked to on appeal. 166 Ala. 274, 51 South. 969; 15 Ala. App. 507, 74 South. 156; 150 Ala. 412; 78 South. 637. The affirmative charge for defendant was correctly refused. 16 Ala. App. 138. The engineer is required to use all means in his power known to skillful engineers, and if his failure to stop the train is the result of not putting on brakes and reversing the engine, the plaintiff may recover. 192 Ala. 410, 68 South. 294.

BRICKEN, P. J. This action originated in the justice court of beat 3 in Houston county, and judgment by default was rendered for plaintiff for the amount sued for. From this judgment an appeal was taken to the circuit court, and a jury trial was there demanded by plaintiff.

In the circuit court the cause was tried and judgment rendered for plaintiff on August 16, 1921, from which judgment this appeal is taken.

[1, 2] On the merits of the case: The first insistence of error is that the trial court erred in sustaining the plaintiff's objection to that portion of the evidence of the witness Livingston wherein said witness stated, "and it also might be dangerous." The witness had just testified that he applied the brakes of the engine in emergency; that he had opened his sand valve and air valve, and that as soon as he had sanded the track he put the brakes in emergency; that he did everything he could; that he applied his brakes in emergency, opened the sand valve and air valve, and sanded the rails in order not to slip while making the emergency stop to prevent running over him (the bull), and then he said, "and it also might be dangerous." Whether the witness meant to say that it was dangerous for him to do what he did to stop the train or that it was dangerous to run over the bull is not satisfactorily shown by the bill of exceptions. In either event, the mere possibility of danger as testified to by him would be immaterial, and therefore no prejudicial error was committed by the trial court in sustaining the objection of the plaintiff to said statement of the witness. Moreover, it does not appear that any motion was made to exclude the statement from the consideration of the jury.

[3] Appellant's second assignment of error raises the propriety of the trial court's giving the following special charge at the request of the plaintiff:

"The Court charges the jury that, when the engineer of the defendant's engine that killed the bull of plaintiff, upon perceiving the bull on the track of defendant, the said engineer must have used all the means in his power known to skillful engineers, such as applying the brakes and reversing engine in order to stop the train, and if the killing of the bull was the result of the failure of defendant's engineer to put on the brakes and reverse the engine, the plaintiff is entitled to recover for the reasonable value of the bull."

We see no error in giving this charge. Section 5473 of the Code of Alabama provides that an engineer, having the control of the running of a train, must, on perceiving any obstruction on the track, use all the means within his power known to skillful engineers, such as applying brakes and reversing engine, in order to stop the train. This charge simply asserts the legal duty resting upon the engineer by reason of the statute. It asserts that, when the engineer perceived the obstruction on the track, it was his duty to use all means within his power known to skillful engineers, such as applying brakes and reversing engine, to prevent the injury. This is the provision of the statute. The charge in question therefore correctly states the law, and there was no error in its being given by the trial court. Ala. Great Sou. Railroad Co. v. Moody, 90 Ala. 46, 8 South. 57.

The third assignment of error is based upon the refusal of the trial court to give the general affirmative charge for the defendant upon the whole complaint, and the fourth assignment of error is based upon the refusal of the trial court to give the general affirmative charge upon the first count of the complaint. These assignments may be properly treated together.

[4] The law is that, whenever a conflict exists in the evidence as to material facts in a case, or when the evidence is of such character as to reasonably support different conclusions therefrom, the affirmative charge cannot be given. On the other hand, if only one reasonable conclusion can be drawn from the evidence in a case, it is proper that the affirmative charge be given on such evidence if the same is believed by the jury. Anderson et al. v. Birmingham Min. R. R. Co., 109 Ala. 128. 19 South. 519.

[5] The plaintiff in this case testified that he found his hog on the railroad track between the rails with its nose and two of its feet cut off; that its body was on the inside

of the track and blood was on the rail; that the suit was brought within less than six months after the hog was killed; and that the hog was worth about $5. We think that the jury in this case, taking into consideration the fact that the hog was found where he was found with its nose and feet cut off and with blood upon the rail of defendant's railroad track, was authorized under the testimony, if believed, and no witness contradicts it, to find that said hog was killed by defendant's train, or locomotive, or cars, and this was sufficient to make out a prima facie case against the defendant railroad company. The affirmative charge first requested, being directed against the complaint in its entirety, could not, therefore, be properly given, as the killing of the hog by defendant's train, locomotive, or cars could have been reasonably inferred from the posture and condition of the carcass and from the other physical surroundings and circumstances. Cent. of Georgia Ry. Co. v. Williams, 202 Ala. 496, 80 South. 880.

Further testing the rule above stated with reference to the refusal of the trial court to give the affirmative charge with respect to the killing of the bull by defendant's train, it may be observed that the evidence, as set out in the bill of exceptions, shows, without dispute that plaintiff's bull was killed by defendant's train at a point on its railroad track located on a slight fill or embankment at the foot of a slight grade; that at the point where the bull was killed the railroad track was practically straight for a mile and a half, and that the train which killed the bull was running from south to north, and that the point at which the bull was killed was visible from a southerly direction for about the distance of one-half mile; that the train consisted of an engine, tender, five loaded box cars, and one empty, and was equipped with "E. T. equipment" in good working order; and that the engineer was keeping a lookout.

[6] The appellant insists that, under all the evidence, it was entitled to the affirmative charge. The evidence shows without dispute that plaintiff's bull was killed on defendant's railroad track by defendant's train, and these facts made out a prima facie case in favor of the plaintiff and cast upon the defendant company, the burden of acquitting itself of negligence. Code 1907, § 5476; Southern Ry. Co. v. Parkes, 10 Ala. App. 318, 65 South. 202; Sou. Ry. Co. v. Osborne, 16 Ala. App. 138, 75 South. 694.

[7] It is evident that in the instant case the engineer of defendant's train was cognizant of his duty because he testified that he was maintaining such lookout. Whether or not the engineer did in fact maintain the lookout as testified to by him, and whether or not he saw the bull in time to prevent the injury, were facts for the determination of the jury.

Upon the trial of this case in the court below, the engineer testified that when he first saw the bull—

"he was coming upon the track. He was about 50 yards (150 feet) ahead of the engine. There was two calves with him. They were going to cross the road from the east side. The other cattle crossed the track. The bull stopped and turned his head to me. I was then pretty close to him at that time; must have been in something like 100 feet of him, I guess, when he stopped. The engine was equipped with E. T. equipment. It was in good working condition. I applied the brake in emergency. I opened my sand valve and air valve, to sand the track, and quick as I done that I slapped on, put the brakes in emergency. I did everything I could. I applied my brakes in emergency, and opened the sand valve and air valve, sanded the rails in order not to slip while making the emergency stop to prevent running over him."

The legal duty rested on the engineer, when he discovered the cattle in dangerous proximity to the track, and attempting to cross the track, to immediately observe the statutory requirements and to acquit himself of negligence. Moody's Case, supra.

[8] Does the testimony of the engineer of necessity and by reasonable inference acquit the defendant of negligence? We think not. It may reasonably be inferred from the testimony, if indeed that is not its direct effect, that when the engineer first discovered the bull in dangerous proximity to the railroad track, and attempting to cross the track, he took no immediate precautionary measures to prevent injury to said bull, which was then 50 yards (150 feet) ahead of the engine, but that he waited until the bull stopped on the track and turned its head towards the engine before he, the engineer, did one thing to prevent the injury. The testimony is clear that the engineer was watching the movements of the bull and calves. He saw them in dangerous proximity to the railroad track, saw the calves cross the track, and saw the bull stop and turn its head. When the bull stopped and when the distance of the engine had been cut down from 150 feet to 100 feet, then the engineer threw his brakes in emergency and sanded the track, but, notwithstanding, ran over the bull and then stopped the train at a point 30 feet beyond where the bull was struck. In other words, it may be reasonably inferred from the evidence that, including the time it took to throw the brakes in emergency and sand the track, the train went 130 feet before it was stopped. The bull was first seen by the engineer, according to his testimony, when he was 150 feet ahead of the engine. If the engineer had then and there thrown the brakes in emergency and sanded the track, then, according to his own testimony, the train would have been stopped in 130 feet, thus leaving the bull standing on the track 20 feet

ahead of the train. This being the state of the evidence, the affirmative charge requested by the defendant could not properly have been given. Anderson et al. v. Birmingham Mineral R. Co., supra.

[9] The affirmative charge requested by the defendant was also properly refused for other reasons. The evidence snows that the track was straight from the point where the bull was killed for one-half mile back; that the train was properly equipped; and that the engineer was keeping a lookout. It is true that the bull was killed at about 8 o'clock p. m., but the testimony is that the train was properly equipped, and, if it was so equipped, it carried a headlight sufficient to disclose the presence of animals on a straight track, either on the track, or in dangerous proximity thereto. Unless the train was equipped with such a headlight as would enable the engineer, from his side of the engine, to see cattle on the track, or in dangerous proximity thereto, on his side, at such a distance ahead of the moving train, on a straight track, as to enable the employés running the train to avoid injury to such animals, this of itself would be negligence. The train being properly equipped with a headlight, the rays therefrom would carry sufficiently far ahead of the moving train so as to enable the engineer to prevent injury to an animal standing on the track, or in dangerous proximity thereto, if he, the engineer, was maintaining the proper lookout.

It is true that the engineer testified that he did not see the bull until he got within 150 feet of him, but might not the jury have found to the contrary, notwithstanding this testimony of the engineer? We think so. The track was straight. Rays from the headlight of a train, according to common knowledge and experience, are projected in straight lines down the track and right of way. The bull was either coming up the embankment or was on it, and was in view of the engineer, because he was looking ahead down the track, and, so far as the record discloses, there was no obstacle or obstruction to prevent the engineer from seeing the bull at a greater distance than 150 feet, and the jury therefore was authorized to say that he did see him at a greater distance than 150 feet, notwithstanding the fact that said witness testified that he did not. Southern Ry. Co. v. Shelton, Adm'r, 136 Ala. 191, 34 South. 194.

[10] The questions hereinabove discussed are presented by the purported bill of exceptions. The discussion has been indulged merely for the purpose of showing that appellant has suffered no injury as a result of the only order we are authorized to enter relative to the bill of exceptions, which is to strike the same from the file for the reason that the purported bill of exceptions was not presented to the trial judge within 90 days as the law requires. This is a jurisdictional matter, and, as stated by the Supreme Court in Box et al. v. Southern Railway Co., 184 Ala. 598, 600, 64 South. 69, 70:

"The seasonable presentation of the bill [of exceptions], to be evidenced by the bill itself, remains a jurisdictional fact, and therefore is not waived by the submission of the cause without a formal motion by the appellee to strike it from the file."

See, also, Patterson v. Holt, 16 Ala. App. 439, 78 South. 637; Cassells' Mill et al. v. Strater Bros. G. Co., 166 Ala. 274, 51 South. 969; Cobb v. Owen, 150 Ala. 412, 43 South. 826.

The motion for new trial cannot be considered. Crawley v. State, 16 Ala. App. 545, 79 South. 804, and cases cited. Pretermitting this however, the motion for new trial was without merit and was properly overruled and denied.

Affirmed.