(124 So. 404)
## CENTRAL OF GEORGIA RY. CO. v. BURKETT.  (4 Div. 502.)

Court of Appeals of Alabama.    Oct. 29, 1929.

O. S. Lewis, of Dothan, for appellee.

SAMFORD, J. This suit was filed by the plaintiff against the defendant for negligently killing two mules. Judgment was rendered on August 30, 1928, in favor of the plaintiff, and against the defendant. The defendant made a motion for a new trial, this motion being spread on the motion docket, and filed in the cause on the 29th day of September, 1928, and is set out both in the bill of exceptions and in the record proper. Both the motion docket, the bill of exceptions, and the record proper show that the motion was set down for hearing by an order of the court, made the same day it was filed, on October 15, 1928, and on that date the motion for a new trial was denied, and the defendant duly excepted to the action of the court in denying the motion.

The first ten grounds of the motion are because the verdict was contrary to the weight of the evidence, the overwhelming weight of the evidence, or the great weight of the evidence. These ten grounds in varying ways raise substantially the same question, and are made the basis of assignments of error 7 to 17, both inclusive. Assignment of error 22 relates to the action of the trial court in re-

Farmer, Merrill & Farmer, of Dothan, for appellant.

fusing to defendant the general charge. All of these assignments are considered together.

■ There is unnecessary repetition in presenting the motion for new trial. All that is required by the statute (Code 1923, § 6088) is that the motion shall be set out in the record proper, and the exception to the ruling of the court thereon is shown in the bill of exceptions. Little Bear Sawmills v. Morrow et al., 22 Ala. App. 394, 116 So. 305; Southern Railway v. Scottsboro, etc., 22 Ala. App. 636, 119 So. 241.

Two mules were killed by the late evening train of defendant shortly after it left Dothan, Ala., on October 23, 1927, on its way to Albany, Ga. The track of the defendant was practically east and west. The train was going east towards Albany, Ga., the engineer was on the right-hand side of the engine, and the fireman on the left-hand side of the engine. The facts tend to show that there was a cut on the left-hand side of defendant's track about 30 or 40 feet wide, and 200 feet long. This cut was shallow at the eastern end, and about 7 deep at the western end. The train approached the cut from the west going east. The only eyewitnesses at all were the fireman, engineer, and one Mrs. Cherry, the witness for the plaintiff.

The fireman testified that he first saw the mules when they were 15 feet from the track coming out of the cut, running as fast as they could towards the track, and onto it, and that the mules were then 150 feet from the engine, the engine traveling at the rate of 40 miles per hour; that shortly before he discovered the mules he was busy performing other services required of him in the operation of the train, such as putting coal on; that when he first put the coal on, he immediately commenced and kept a lookout, and saw the mules dash out of the cut onto the track 150 feet in front of the engine, and they ran not much over 50 feet before they were struck and killed. The fireman further testified that immediately upon seeing the mules he holloed to the engineer, and commenced ringing the bell, and the engineer cut off the steam, applied the brakes, blew the whistle, and sanded the track; that the train could be stopped running at the speed in 500 or 600 feet, and the engine was properly equipped, and the equipment was in proper condition.

The engineer testified that the train was traveling 40 miles an hour at the time he discovered the mules, and that they were then 75 or 100 feet from him, moving toward the track, and coming from the left-hand side, he being on the right-hand side; that they were coming as fast as they could, and ran up the bank out of the cut onto the rails, being about 75 or 100 feet in front of the approaching engine, and he discovered them about the time the fireman holloed at him, but his view of one of the mules was cut off by the front of the engine, he being on the right-hand side of the engine. He further says that the mules were 75 or 100 feet in front of the train, and they ran about 75 feet before he hit them. In other words, the mules were hit within 175 feet after they first dashed on the track. The engineer further testified without dispute that the train was in proper condition, and properly equipped; that he immediately cut off the steam, applied the brakes, and sanded the track, and blew the whistle upon first first discovering the mules, and that the train was properly equipped, and the equipment in good condition; that the train so in proper condition could not be stopped traveling as it was within less than 500 or 600 feet; that he used all the means known to skillful engineers.

■■ The testimony of the witness Cherry was to the effect that, when she saw the mules, they were 25 yards in front of the locomotive, running up the track; that no alarm was sounded from the engine, and other testimony for plaintiff tended to prove that the distance from the point where the mules came on the track to the point where they were struck was from 150 to 175 yards; i. e., 450 to 525 feet. So that the inference to be drawn from the physical facts, in connection with the testimony of the engineer and fireman that they saw the mules approaching the track, would warrant the jury in finding that the engineer and fireman were mistaken as to the distance the mules were from the locomotive when they were first seen and to rebut the evidence that the defendant had acquitted itself of negligence after the discovery of the mules in dangerous proximity to defendant's track. It might not have been possible to have brought the train to a full stop within 525 feet, but by prompt action on the part of the engineer the speed could have been so slackened as to have permitted the mules, running as they were, to have escaped danger. The injury to the mules having been shown, the burden was on defendant to acquit itself of negligence (Code 1923, § 9955), and, the facts presenting a jury question, the defendant was not entitled to the affirmative charge, nor can we say that the verdict was so contrary to the weight of the evidence as would warrant this court in holding that the trial judgment committed error in overruling defendant's motion for new trial. A. C. L. Ry. v. Fannin, 22 Ala. App. 374, 115 So. 850; Cobb v. Malone, 92 Ala. 630, 9 So. 738.

Charges 2 and 3 are misleading, and for that reason were properly refused. Moreover, this exact point was covered fully and at length in the court's oral charge.

■ It is no defense to an action of this nature that plaintiff permitted his stock to run at large in a stock-law district. A. G. S. Ry. Co. v. McAlpine & Co., 71 Ala. 545.

■ A witness may be allowed to testify that there was nothing to obstruct the view from one point to another. This is the statement of a fact, and not a conclusion. C. of G. Ry. v. Hyatt, 151 Ala. 355, 43 So. 867.

■ The testimony as to the condition of the mules some six or seven years prior to the accident was too remote and of no probative force, in fixing value, at the time of the injury, but, under the facts as related in the bill of exceptions and the amount of the judgment, we hold that there was no injury. The other assignments are without merit.

There is no error in the record, and the judgment is affirmed.

Affirmed.