42 So.2d 837

## PERRY et al. v. ATLANTIC COAST LINE R. CO.

### 4 Div. 129.

Court of Appeals of Alabama.
Nov. 22, 1949.

Val L. McGee and Douglas Brown, of Ozark, for appellants.

Evans Hinson of Montgomery, and Chas. O. Stokes, of Ozark, for appellee.

646

CARR, Judge.

This is an action for damage for the alleged negligence in killing six hogs.

In the court below the trial judge gave the general affirmative charge for the defendant, the Atlantic Coast Line Railroad Company. This action of the court presents the controlling question on this appeal.

■ It is axiomatic that the general affirmative charge should not be given for the defendant when there is the slightest evidence tending to prove a right of re-covery by the plaintiff; or if there is evidence reasonably affording an inference adverse to the right of recovery by the defendant. McMillan v. Aiken et al., 205 Ala. 35, 88 So. 135; Southern R. Co. v. Randall, 212 Ala. 41, 101 So. 661; Osborn v. Grizzard, 251 Ala. 275, 37 So.2d 201; Atlanta & St. A. B. R. Co. v. Hodges, 19 Ala.App. 42, 94 So. 252; Birmingham Electric Co. v. Freeman, 32 Ala. App. 479, 27 So.2d 231.

■ In determining the propriety of the general charge, the evidence favorable to the party against whom it is requested must be accepted as true. Southern R. Co. v. Randall, supra; Alabama Power Co. v. Buck, 250 Ala. 618, 35 So.2d 355.

■ The scintilla of evidence rule is of force and effect in civil cases in this State. Birmingham Electric Co. v. Freeman, supra.

■ Without dispute in the evidence the appellee's train killed the appellants' hogs. In this state of the record, the burden of proof was cast upon the defendant to show that its servants were free from negligence which proximately caused the injury to the animals. Central of Georgia R. Co. v. Williams, 200 Ala. 73, 75 So. 401; Louisville & N. R. Co. v. Green, 222 Ala. 557, 133 So. 294; Southern R. Co. v. Osborne, 16 Ala.App. 138, 75 So. 694; Gulf, M. & O. R. Co. v. Scott, 32 Ala.App. 326, 27 So.2d 150; Louisville & N. R. Co. v. Holmes, 32 Ala.App. 551, 27 So.2d 878.

Title 48, Sec. 173, Code 1940 specifically stipulates: "A railroad company is liable for all damages done to persons, or to stock or other property, resulting from a failure to comply with the requirements of the three preceding sections, or any negligence on the part of such company or its agents; and when any person or stock is killed or injured, or other property destroyed or damaged by the locomotive or cars of any railroad, the burden of proof, in any suit brought therefor, is on the railroad company to show a compliance with the requirements of such sections, and that there was no negligence on the part of the company or its agents."

Title 48, Sec. 170, Code 1940, in pertinent part provides: "He (engineer, we

add) must also, on perceiving any obstruction on the track, use all the means within his power, known to skillful engineers, such as applying brakes and reversing engine, in order to stop the train."

■ Consistent with the performance of his other duties incident to the operation of his train, it is the duty of the engineer to keep a constant lookout for obstructions on the railroad tracks over which he is journeying. Central of Ga. Ry. Co. v. Dumas, 131 Ala. 172, 30 So. 867; Louisville & N. R. Co. v. Sellers, 222 Ala. 615, 134 So. 8.

This duty is also imposed upon the fireman, unless there is evidence that the engineer alone is charged with the duty of keeping a vigilant lookout. Kansas City, M. & B. R. Co. v. Wagand, 134 Ala. 388, 32 So. 744.

■ A failure in this respect is itself an act of negligence if injury results from it.

"The liability does not necessarily commence with the first discovery of the obstruction. It dates from the time it could have been discovered through the maintenance of a proper lookout." Mobile & Birmingham Ry. Co. v. Kimbrough, 96 Ala. 127, 11 So. 307, 308. See also, Louisville & N. R. Co. v. Posey, 96 Ala. 262, 11 So. 423.

As was stated in Louisville & N. R. Co. v. Brinkerhoff & Co., 119 Ala. 606, 24 So. 892, 894: "There was evidence from which the jury might have inferred that the engineer could have seen the animals on the track in time to have stopped short of striking them. If this were true, it was his duty to see them, and a failure to perform that duty was damnifying negligence."

In the instant case the hogs were killed in the daytime and in fairly close proximity to a curve in the defendant's tracks. On account of this curve the engine obscured the vantage of the engineer to the track ahead.

The fireman testified that he was keeping a lookout and that he first saw the hogs as he rounded the curve and when the engine was about 300 feet from them. At the time "there were some on the track and some coming on the track." The fireman did not measure the distance, but estimated it to be the indicated length.

According to his testimony, upon observing the animals he immediately called the engineer's attention "that there were some hogs on the track and he opened the cylinder cocks and put the brakes on and turned the bell on and I grabbed the steam whistle, and was blowing it."

The witness testified further that the train stopped at a distance of about 100 feet after it had struck the hogs.

The engineer testified that his train was equipped with standard braking equipment. He answered the following question in the affirmative: "Immediately on Mr. Dansby's calling your attention to them did you do everything that is possible, that a skillful engineer would do under the circumstances, to bring that train to a stop?"

Both the engineer and the fireman testified that at the time the hogs were first observed the train was traveling at a rate of about 35 miles per hour and that its speed was reduced to 30 miles per hour at the time the hogs were killed. Neither of the witnesses was able to estimate the distance required to stop the train under the conditions as they then existed. The engineer stated that the train did not stop after the injury to the animals. There was other evidence to like effect.

The appellee's section foreman testified in part:

"Q. Have you ever stepped the distance from where those hogs were found back to the curve, where the curve goes blind on the inside? A. You mean where the curve begins?

"Q. Yes. A. East or West?

"Q. The fartherest point west where the hogs were killed, the curve going back east, have you ever stepped from the place the hogs were killed back to where the fireman on the inside of the curve could see? A. Yes, sir. It wouldn't be to the end of the curve though.

"Q. The curve would go all the way around— A. In other words, the view that the fireman could see the hogs?

"Q. Yes, sir. A. I would say approximately 400 feet.

"Q. That's from where you saw those hogs that were killed back to where the curve— A. Where the fireman could see.

"Q. Where the fireman could see on the inside, you say about 400 feet? A. Yes, sir."

In respect to this distance and vantage, the plaintiff R. E. Perry said:

"Q. Do you know the place where you found the hogs? A. Yes, sir.

"Q. Have you stepped from that place back to the inside of the curve where your vision gets clear? A. Yes, sir; just as near as we could figure that a person could see around there.

"Q. Have you stepped it? A. Yes, sir.

"Q. How far would you testify or say that it was from that point to the point where the curve gets clear? A. 250 steps.

"Q. Two hundred and fifty steps? A. I wouldn't say I stepped a yard at the time. I wouldn't say it was 250 yards.

"Q. When you stepped from the place where the hogs got killed back to the curve, explain that to the jury. Did you turn around and look back? A. Yes, sir; I turned around and looked back, and, of course, the fireman would have been a heap higher than I was, but I could have seen the hogs · on the track down there 250 steps.

"Q. Was your vision clear? A. Yes, sir; my vision was clear.

"Q. Your vision was clear? A. Yes, sir."

The above delineation of the evidence includes all that is pertinent for a review of the question of instant concern.

■ We cannot escape the conclusion that the court was in error in giving the affirmative charge in defendant's behalf.

To illustrate our conclusion it is not necessary for us to comment on this evidence. For obvious reasons we think we should not.

In the case of Louisville & N. R. Co. v. Martin, 240 Ala. 124, 198 So. 141, 143, the Supreme Court observed: "Of course, though he testified to the contrary, the jury could reasonably infer the engineer who was looking ahead and with unobstructed view for 200 feet, did likewise see plaintiff's intestate as she walked the highway and as she turned toward the crossing."

In the case of Kansas City, Memphis & Birmingham R. Co. v. Wagand, 134 Ala. 388, 32 So. 744, 745, the engineer who was in charge of the train testified that he saw plaintiff and his team on the track as soon as he came around the curve; that he did all things in his power and everything that could be done by a skillful engineer to prevent the accident; that it was not possible at the speed the train was going to stop it, after the obstruction was seen, before the train reached the place of the accident.

In response to the insistence that the general affirmative charge was due the defendant the court held: "The space over which the train had to pass before reaching the team after it came within range of the trainmen's vision, together with the train's velocity at the place of accident, were circumstances in evidence, which may have afforded an inference opposed to testimony of defendant's witnesses concerning both the lookout and the efforts made at checking speed, and therefore the question of negligence was properly left to the jury."

As stated herein, both the fireman and the engineer testified that the train was equipped with standard braking equipment, but there was no evidence that the equipment was at the time in good mechanical working condition. In this state of the evidence we think that the holding in Northern Alabama R. Co. v. White, 14 Ala.App. 228, 69 So. 308, has analogous application.

Appellee's counsel cites several cases in which the facts show that the animals injured by the trains came suddenly and unobserved onto the tracks and in such close proximity to the moving trains as to render the accidents unavoidable. Clearly these cases are not in factual analogy to the case at bar. Neither are the cases

in which dogs are killed by a train applicable in every legal aspect. The courts recognize that dogs have the agility and celerity in avoiding and escaping danger not possessed by the ordinary lower animal.

The following additional authorities lend weight and support to our view: Birmingham Mineral R. Co. v. Harris, 98 Ala. 326, 13 So. 377; Louisville & N. R. Co. v. Cochran, 105 Ala. 354, 16 So. 797; Chattanooga S. R. Co. v. Daniel, 122 Ala. 362, 25 So. 197; Alabama Great S. R. Co. v. Boyd, 124 Ala. 525, 27 So. 408; Southern Ry. Co. v. Shirley, 128 Ala. 595, 29 So. 687; Southern R. Co. v. Taylor, 204 Ala. 529, 86 So. 375; Central of Ga. R. Co. v. Burkett, 23 Ala.App. 294, 124 So. 404.

The judgment of the lower court is ordered reversed and the cause is remanded.

Reversed and remanded.