120 So.2d 574

LOUISVILLE & NASHVILLE RAILROAD COMPANY

v.

J. C. HARPER, Jr.

2 Div. 19.

Court of Appeals of Alabama.

May 10, 1960.

Reeves & Stewart, Selma and Steiner, Crum & Baker, Montgomery, for appellant.

L. Y. Sadler, Jr., Camden, for appellee.

PRICE, Judge.

The plaintiff, J. C. Harper, Jr., sued to recover damages for the alleged negligent killing of his cow by one of defendant's trains. Judgment was rendered for plaintiff, his damages being assessed at $150. Defendant appeals.

The evidence introduced on plaintiff's behalf tended to show that at about 2 o'clock in the afternoon of December 28, 1956, defendant's locomotive struck plaintiff's black Angus cow, valued at $150, causing her death. The plaintiff's pasture land was adjacent to defendant's right-of-way and the roadbed was slightly higher than the surrounding terrain.

Plaintiff's witness, Arthur Jones, testified he saw the train and heard its whistle blow once for the road crossing at Neenah and after it had passed the station he saw six to ten cows start up onto the roadbed on the right-hand side in the direction the train was traveling. Only three of the cows actually got onto the track and two of them ran off on the left side, but the third ran down the track in front of the train a distance of "from here to the other side of the Chevrolet place," before the train picked her up and dragged her a distance "something like betwixt here and the Ford place down there" and carried her "straight on up to the trestle and that is where it pitched it off." The train "slowed up after it just about got to her, hitting her," and was "hitting her before it slowed up."

The plaintiff testified he saw blood and hair for a distance of 150 yards along the track, indicating the distance the animal was dragged.

For the defendant J. E. Whitehead testified he was the fireman on defendant's train; that he was sitting in the cab on the left side in front of the brakeman; that the engineer was operating the train from the right side of the cab; that it was a clear day and the accident occurred between 1 and 2 o'clock in the afternoon six or seven hundred feet south of Neenah; that he first saw the cow as she came upon the roadbed about 20 feet in front of the engine; that the whistle was blowing short blasts at intervals because several other cows had just crossed over the track ahead of this one; that the others crossed from the left to the right and this one also came up from the left; that these other cows crossed the track a hundred or a hundred and fifty feet ahead of the engine; that he was keeping a lookout ahead and called the presence of the cows to the attention of the engineer, who immediately applied the brakes; that the train was running at a speed of from 20 to 25 miles per hour when he first saw the cows and the application of brakes slowed the train so that it was moving at a rate of ten miles per hour when it struck her. The train came to a complete stop 70 or 80 feet from where it struck the cow. The cow was caught underneath the engine. The train was backed off her and when she was released she got up and walked away.

A. M. Kimbrough testified he was the brakeman on defendant's train. His testimony was to substantially the same effect as that of the fireman, except that he stated the cows that crossed the track were perceived by him when they were four to five hundred feet ahead of the engine; that he and the fireman notified the engineer, who applied the brakes and sounded the whistle at irregular intervals. The train immediately began slowing down. Another cow came onto the right-of-way from the left a few feet in front of the engine. The train, running very slowly, struck this cow at the north end of the trestle, pushing her three-quarters of the way across the trestle, then came to a stop. This cow when hit was in about the same area in which he saw the other cows. The train, consisting of an engine and ten cars, was approximately 450 feet in length. The witness' estimate of the distance in which the train was stopped was 230 feet. With reference to a curve in the vicinity of where the cow was struck, plaintiff's witness Jones testified, "You can see all the way around that curve." Defendant's fireman testified the train operatives were sitting "five steps" above ground level; that the track curved to the left, the side he was sitting on; that he had a clear vision of the track ahead "as far as you can see around a curve;" that there were no blind spots on his side and he "could

**638**

see a distance;" that the engineer was looking out the right side, and couldn't see as far as witness could see around the curve.

Defendant's evidence tended to show that the engine was a Diesel and was equipped with Westinghouse brakes, which is standard operating equipment. The brakes were in good working order, and functioned properly; having been inspected at Camden an hour before the accident, and were in good condition when the train stopped at a station four or five miles north of Neenah.

The fireman testified that reversing the engine is a part of the operation of stopping a steam locomotive, but it is not a part of the operation of stopping a Diesel engine. Its effect on a Diesel would be to strip the gears and would have nothing to do with stopping the train.

The fireman and brakeman testified the engine was equipped with both service and emergency brakes, but the engineer made only a service application of brakes and did not go into emergency. With a longer train emergency brakes take effect quicker than on a train with nine cars, and an application of emergency brakes on this train would not have stopped the train any quicker than the application of service brakes. The engineer and other employees in charge of the train were skillful, experienced, careful men, and that everything was done that a skillful engineer could have done under similar circumstances to stop the train.

■ The evidence established a prima facie case in favor of plaintiff and imposed upon the defendant the burden of acquitting itself of negligence. Title 48, Section 173, Code 1940; Louisville & Nashville Railroad Co. v. Green, 222 Ala. 557, 133 So. 294; Louisville & Nashville Railroad Co. v. Moseley, 38 Ala.App. 19, 81 So.2d 318.

By Section 170, Title 48, Code, supra, when the engineer, or other person having control of the operation of the train, perceives an obstruction on the track, he must use all the means in his power, known to skillful engineers, in order to stop the train.

■ "The duty to take precaution against inflicting injuries arises not only when the engineer of a moving train sees an animal on the track, or in dangerous proximity thereto, but also when by the exercise of due diligence he might have seen it. A failure in either of these respects is negligence." Louisville & Nashville R. Co. v. Posey, 96 Ala. 262, 11 So. 423. See also Owen v. Southern R. Co., 222 Ala. 499, 133 So. 33; Alabama Great Southern R. Co. v. Smelley, 237 Ala. 471, 187 So. 630.

The fireman is also charged with the same duty, unless there is evidence that the engineer alone is charged with the duty of keeping a vigilant lookout. Kansas City, Memphis & Birmingham R. Co. v. Wagand, 134 Ala. 388, 32 So. 744; Perry v. Atlantic Coast Line R. Co., 34 Ala.App. 644, 42 So.2d 837; Louisville & Nashville Railroad Co. v. Moseley, supra.

■ Under the conflicting evidence in this case it was for the jury to determine whether the persons operating the train were keeping a proper lookout, and whether they took due precautions to prevent the injury. The defendant was not entitled to the affirmative charge.

The evidence was sufficient to sustain the verdict, therefore, the court properly overruled defendant's motion for a new trial.

One of the Assignments of error is based on the remarks of the court in the following occurrence:

"The Court: Now, we had on the stand yesterday, Mr. Whitehead, the fireman; and he was asked a question similar to this, in substance, Do you remember every animal your engine strikes? He was also asked a

question in substance this: Do you always strike cows on the railroad track or line? I can't say those are the exact words; but that is the substance. I mention that simply for the purpose of refreshing our recollections about the situation. After some research the Court has concluded—I sustained the objection to them; those questions were propounded on cross examination by counsel for the Plaintiff—it appears our Supreme Court has held those questions are permissible; and the Court, in view of that decision, will change its ruling and will now hold that the counsel for the Plaintiff may propound those questions to the witness, if he sees fit to do so. If he wants to do that, we will call the witness back to the stand. I am now changing the ruling. Those are permissible questions; and counsel for the Plaintiff may ask them if he sees fit to do so. I will give him an opportunity to do that. That is a matter for the Plaintiff's attorney to decide.

"Mr. Sadler: We don't care to go into that at this time.

"Mr. Stewart: For the record, if the Court please, we renew our objection to the questions on the grounds stated at the time of objecting; and we also wish to object to the Court's statement and remarks at this time in regard to the reason for changing your ruling; and take an exception to that ruling on the same grounds on which we have previously objected. It is highly prejudicial to the Defendant; and brings into this case details of other cases outside of the record in this case, which could be and would be highly prejudicial to the Defendant; and it is, therefore, incompetent, irrelevant, immaterial and illegal in this case.

"The Court: The Court has not stated I would permit details to be brought in. I simply said as to those particular questions or questions in substance that would be permitted."

■ The record shows the questions to which the court had sustained objections were propounded to defendant's witness Whitehead on cross-examination, as follows:

"Q. Do you recall the circumstances surrounding the striking of other cows by your engine you were riding on?"

"Q. Did you often hit cattle with trains you were fireman on?"

It is evident the decision of the Supreme Court to which the trial judge referred was that of Louisville & Nashville Railroad Company v. Dumas, 209 Ala. 324, 96 So. 243, 244, where the court said: "On the cross-examination of defendant's engineer, who had had many years experience, he was asked whether he remembered every animal his engine struck, and whether he often struck cows on the line. These questions were not inappropriate, on cross-examination, to test the credibility of the witness in his description of the circumstances attending the killing of plaintiff's cow."

The record further discloses that the witness Whitehead was not recalled for further cross-examination. It is our opinion the court's remarks were not prejudicial to defendant and there is no merit in this assignment of error.

■ Defendant filed pleas 2 and 3, alleging that plaintiff was guilty of contributory negligence in allowing his cow to be upon defendant's right-of-way. Demurrer to said pleas was sustained. Assignments of error 20 and 21 are based upon the court's ruling.

Defendant also requested the court to give certain written charges stating, in substance, that Wilcox County is no longer a "free range" County and that owners of

cows are required to confine them and that it is unlawful to allow said cows to run at large upon the premises of another without the express permission of the owners of said land. The court's refusal to give said charges is made the basis of assignments of error 14, 15, and 16.

Assignments of error 17 and 18 are based on the court's refusal to give defendant's requested written charges asserting, in substance, that plaintiff was guilty of contributory negligence if he permitted his cow to go at large upon defendant's right-of-way, and if the jury believed from the evidence that he did allow it to be on the right-of-way and further that the fact of its being on the right-of-way proximately contributed to its death, they should find for defendant.

In Armstrong v. Louisville and Nashville Railroad Company, 265 Ala. 113, 90 So.2d 103, 104, the court said: "Counsel in briefs mention the enactment of the statute prohibiting open range counties. * * * Under the ruling of our cases, however, we do not consider that the prohibition of open range counties has any effect in this case and it should not be considered. Prohibition of the open range does not change the duty and burden of proof placed on the railroad under § 173, Title 48, Code of 1940."

One of the cases referred to by the court in the Armstrong case is Alabama Great Southern Railroad Company v. McAlpine & Co., 71 Ala. 545, where the court said: "* * * it is not such contributory negligence in this State for the owner of stock to suffer it to run at large, as to prevent him from recovering for any damage negligently done to it by persons or corporations, owning or controlling railroads."

Assignments of error 14, 15, 16, 17, 18, 20 and 21 are without merit.

The judgment is affirmed.

Affirmed.